IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| SHEENA BLACKWELL YOUNG | : | CASE NO. 19-67578-PWB |
| *AKA SHEENA YOUNG* | : | |
| *AKA SHEENA NICOLE BLACKWELL* | : | |
| *AKA SHEENA BLACKWELL* | : | |
| *AKA SHEENA N BLACKWELL* | : | |
| *AKA SHEENA B YOUNG,* | : | |
| | : | |
| Debtor. | : | |
| | : | |
| TRUIST BANK, SUCCESSOR BY MERGER | : | CONTESTED MATTER |
| TO SUNTRUST BANK, | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| SHEENA BLACKWELL YOUNG | : | |
| *AKA SHEENA YOUNG* | : | |
| *AKA SHEENA NICOLE BLACKWELL* | : | |
| *AKA SHEENA BLACKWELL* | : | |
| *AKA SHEENA N BLACKWELL* | : | |
| *AKA SHEENA B YOUNG,* | : | |
| MARY IDA TOWNSON, Trustee | : | |
| | : | |
| Respondents. | | |

## <u>NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Movant has filed documents with the court to obtain relief from the automatic stay.

**<u>YOUR RIGHTS MAY BE AFFECTED.</u>  You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. <u>If you do not have an attorney, you may wish to consult one.</u>**

If you do not want the court to grant relief from the automatic stay or if you want the court to consider your views on the motion, then you or your attorney shall attend the hearing scheduled to be held on

**April 1, 2020 at 1:30pm at the United States Bankruptcy Court, 75 Ted Turner Drive S.W., Courtroom 1401, Atlanta, Georgia 30303.**

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is: Clerk, 75 Ted Turner Drive S.W., Suite 1340, Atlanta, Georgia 30303.  You must also send a copy of your response to the undersigned at the address stated below.


Dated this:   <u>  3/10/2020  </u>


                    <u>   /s/ Heather D. Bock            </u>
                    Heather D. Bock, GA BAR NO. 122806
                    Attorney for Movant
                    McCalla Raymer Leibert Pierce, LLC
                    1544 Old Alabama Road
                    Roswell, Georgia 30076
                    678-281-6444
                    Heather.Bock@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| SHEENA BLACKWELL YOUNG | ) | CASE NO. 19-67578-PWB |
| *AKA SHEENA YOUNG* | ) | |
| *AKA SHEENA NICOLE BLACKWELL* | ) | |
| *AKA SHEENA BLACKWELL* | ) | |
| *AKA SHEENA N BLACKWELL* | ) | |
| *AKA SHEENA B YOUNG,* | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| TRUIST BANK, SUCCESSOR BY MERGER TO | ) | CONTESTED MATTER |
| SUNTRUST BANK, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| SHEENA BLACKWELL YOUNG | ) | |
| *AKA SHEENA YOUNG* | ) | |
| *AKA SHEENA NICOLE BLACKWELL* | ) | |
| *AKA SHEENA BLACKWELL* | ) | |
| *AKA SHEENA N BLACKWELL* | ) | |
| *AKA SHEENA B YOUNG,* | ) | |
| MARY IDA TOWNSON, Trustee | ) | |

Respondents.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest.  Said real property is security for a promissory note, and is commonly known as 3304 Quick Water Landing NW, Kennesaw, Georgia 30144 (the "Property").

3.

Debtor has defaulted in making payments which have come due since this case was filed. As of February 14, 2020, Debtor is delinquent for three (3) payments of $1,406.98 each (December, 2019 to February, 2020), for a total default of $4,220.94, pursuant to the terms of the Loan Modification.

4.

As of February 14, 2020, the unpaid principal balance is $159,243.08, and interest is due thereon in accordance with the Loan Modification.

5.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

6.

Because the Security Deed so provides, Movant is entitled to its attorney's fees.

7.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and

to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable

attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or

written correspondence regarding potential loss mitigation options pursuant to applicable non-

bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any

other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule

4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/ Heather D. Bock*
Heather D. Bock, Georgia BAR NO. 122806
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6444
678-281-6444
Heather.Bock@mccalla.com

BANKRUPTCY CASE NO. 19-67578-PWB

CHAPTER 13

CERTIFICATE OF SERVICE

I, Heather D. Bock, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Sheena Blackwell Young
3304 Quick Water Landing NW
Kennesaw, GA 30144

E. L. Clark                              *(served via ECF notification)*
Clark & Washington, LLC
Bldg. 3
3300 Northeast Expwy.
Atlanta, GA 30341

Mary Ida Townson, Chapter 13 Trustee    *(served via ECF notification)*
Suite 1600
285 Peachtree Center Ave, NE
Atlanta, GA 30303

U.S. Trustee                             *(served via ECF notification)*
Office of U.S. Trustee
75 Spring St.
362 Richard B. Russell Bldg.
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:    3/10/2020    By:    */s/ Heather D. Bock*
                (date)              Heather D. Bock Georgia BAR NO. 122806
                                    Attorney for Movant

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>**SHEENA BLACKWELL YOUNG**<br>*AKA SHEENA YOUNG*<br>*AKA SHEENA NICOLE BLACKWELL*<br>*AKA SHEENA BLACKWELL*<br>*AKA SHEENA N BLACKWELL*<br>*AKA SHEENA B YOUNG,*<br><br>    Debtor. | Chapter 13<br><br>Case No. 19-67578-PWB |

**DECLARATION IN SUPPORT OF
MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, Dean Liverman , being:

1.    I am a/an Officer of Truist Bank, successor by merger to SunTrust Bank ("Truist") and am authorized to sign this affidavit. This affidavit is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    As part of my job responsibilities for Truist, I have personal knowledge of and am familiar with the types of records maintained by Truist in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the business records and files of Truist that pertain to the Loan and extensions of credit given to the Debtor(s) concerning the property securing such Loan.

3.    The information in this declaration is taken from Truist's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course

of Truist's regularly conducted business activities.  It is the regular practice of Truist to create and maintain such records.

4.      The Debtor(s), Sheena Nicole Blackwell, have/has executed and delivered or is/are otherwise obligated with respect to the attached Promissory Note dated August 11, 2014 (the "Note").  Pursuant to the attached Security Deed, all obligations of the Debtor(s) under and with respect to the Note and the Security Deed are secured by the property referenced in the Motion. The terms of the Note were amended by the attached loan modification agreement entered into by and between SunTrust Mortgage, Inc. and the Debtor dated November 3, 2017 (the "Loan Modification Agreement").

5.      As of February 14, 2020, there are one or more defaults in paying pre-petition arrears and/or post-petition amounts due with respect to the Note.  Such default is a basis under the Security Deed for the right to foreclose on the property.

6.      As of February 14, 2020, the unpaid principal balance of the Note is $159,243.08.

7.      The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of February 14, 2020:

| Number of Missed Payments | From | To | Principal and Interest | Escrow (if applicable) [1] | Monthly Payment Amount | Total Amounts Missed (Number of Missed Payments multiplied by Monthly Payment Amount) |
|---|---|---|---|---|---|---|
| 3 | 12/1/2019 | 02/1/2020 | $748.82 | $658.16 | $1,406.98 | $4,220.94 |

[1] The total of missed post-petition payments for this loan include any missed escrow payments.  Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable).  To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments.  As part of the next annual RESPA analysis, Truist will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage.  All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

|  | Total | **$4,220.94** |

8.      Upon information and belief, as of February 14, 2020 the unpaid amount of the prepetition arrearage due is $36,903.91[2].

9.      As of the February 14, 2020, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $4,220.94, consisting of (i) the foregoing total of missed post-petition payments in the amount of $4,220.94, plus (ii) the post-petition fees and advances for taxes and insurance in the amount of $0.00.

10.     The following documents are attached as exhibits and incorporated herein by reference:

(a)   Attached hereto as Exhibit A is a true and correct copy of the Note.

(b)   Attached hereto as Exhibit B is a true and correct copy of the Security Deed.

(c)   Attached hereto as Exhibit C is a true and correct copy of the Loan Modification Agreement.

(d)   Attached hereto as Exhibit D is a payment history for the period since the date of the first pre-petition or post-petition default that has not been cured.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 5ᵀᴴ day of MARCH , 2020 in the City of RICHMOND, State of VIRGINIA .

3/5/2020

Signature   DEAN LIVERMAN
OFFICER

---

[2] This amount reflects amounts due and not yet received from Chapter 13 trustee distribution on the applicable proof of claim for pre-petition arrears. For Chapter 7, this amount reflects the arrears due at the time of filing. Additional information regarding this amount is available upon request.

# Exhibit

# "A"

**Multistate**  <center># NOTE</center>

FHA Case No:

**August 11, 2014**
(Date)

<center>3304 QUICK WATER LANDING NW
KENNESAW, GEORGIA 30144
(Property Address)</center>

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED TWENTY
THOUSAND NINE HUNDRED TWENTY-FOUR AND NO/100** Dollars (U.S. **$220,924.00**), plus interest, to the order of Lender.
Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND
ONE FOURTH** percent (**4.250%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower
defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **October 1, 2014**.
Any principal and interest remaining on the **1st day of September, 2044**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at

<center>**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TEXAS 75254**</center>

or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$1,086.81**.
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge
shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box.]

☐  Graduated Payment Allonge        ☐   Growing Equity Allonge        ☐    Other (specify)

---

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IDS, Inc.

<center>Page 1 of 3</center>

Borrower(s) Initials  S  B

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (**4.000%**) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02                              Page 2 of 3
IDS, Inc.                                                              Borrower(s) Initials  S  B

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
**SHEENA NICOLE BLACKWELL**          -Borrower                                                -Borrower

Loan originator (organization): **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**; NMLS #
Loan originator (individual): **WESLEY CARRINGTON MURPHY**; NMLS #

PAY TO THE ORDER OF:
                    Suntrust Mortgage Inc.
        WITHOUT RECOURSE
    EVERETT FINANCIAL INC.,
DBA: SUPREME LENDING, A TEXAS CORPORATION
BY:
NAME:    GWEN CLAUS
TITLE:    POST CLOSING MANAGER

WITHOUT RECOURSE, PAY TO THE ORDER OF

_____
SUNTRUST MORTGAGE, INC.

**MARY KATHRYN BRIZENDINE, Vice President**

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02                    Page 3 of 3
IDS, Inc.

# Exhibit

# "B"

SunTrust

Filed and Recorded Aug-25-2014 03:51:08PM
DOC#: D2014-059957
Georgia Intangible Tax Paid $663.00

*Rebecca Keaton*

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

McManamy McLeod Heller, LLC
3520 Piedmont Road
Suite 110
Atlanta GA 30305

WHEN RECORDED, MAIL TO
EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TEXAS 75254

This instrument was prepared by
EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TEXAS 75254
214-340-5225

_____[Space Above This Line For Recording Data]_____

State of Georgia

FHA Case Number

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on **August 11, 2014**

The Grantor is **SHEENA NICOLE BLACKWELL, SINGLE WOMAN**, ('Borrower')
and whose address is **3304 QUICK WATER LANDING NW, KENNESAW, GEORGIA 30144**

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee  MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026**, tel  **(888) 679-MERS**

**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION**, ("Lender")
is organized and existing under the laws of **TEXAS**,
and has an address of **14801 QUORUM DRIVE, SUITE 300, DALLAS, TEXAS 75254.**

Borrower owes Lender the principal sum of **TWO HUNDRED TWENTY THOUSAND NINE HUNDRED TWENTY-FOUR AND NO/100**, Dollars (U S  **$220,924.00**)  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ('Note'). which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **September 1, 2044**  This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in **COBB** County, Georgia

FHA Georgia Security Deed with MERS – 4/96                                                    Amended 2/01

IDS Inc.                                                                    Borrower(s) Initials  S  B

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**

Parcel ID Number ▮▮▮▮▮▮

which has the address of    **3304 QUICK WATER LANDING NW**
**KENNESAW, GEORGIA 30144,** ("Property Address"),

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property" Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4 In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds"

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U S C Section 2601 et seq and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c)

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium,

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required,

Third, to interest due under the Note,
Fourth, to amortization of the principal of the Note, and
Fifth, to late charges due under the Note

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance This insurance shall be maintained in the amounts and for the periods that Lender requires Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary All insurance shall be carried with companies approved by Lender The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender

In the event of loss, Borrower shall give Lender immediate notice by mail Lender may make proof of loss if not made promptly by Borrower Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser

**5. Occupancy, Preservation, Maintenance and Protection of the Property, Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control Borrower shall notify Lender of any extenuating circumstances Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default Lender may take reasonable action to protect and preserve such vacant or abandoned Property Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

**7 Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2 Borrower shall pay these obligations on time directly to the entity which is owed the payment If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable

FHA Georgia Security Deed with MERS – 4/96                                                                                      Amended 2/01

IDS Inc                                                                                          Borrower(s) Initials

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).

FHA Georgia Security Deed with MERS – 4/96

IDS Inc.

Page 4 of 7

Amended 2/01

Borrower(s) Initials

Borrower's covenants and agreements shall be joint and several Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end the provisions of this Security Instrument and the Note are declared to be severable

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower This assignment of rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of breach to Borrower (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument, (b) Lender shall be entitled to collect and receive all of the rents of the Property, and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower However, Lender or a judicially appointed receiver may do so at any time there is a breach Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full

**18  Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses**

incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es) ]

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Adjustable Rate Rider |
| ☒ Planned Unit Development Rider | ☐ Growing Equity Rider | ☒ Other **Waiver of Borrower's Rights Rider,** |

---

Borrower(s) Initials 

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument

_____ (Seal)          _____ (Seal)
SHEENA NICOLE BLACKWELL        -Borrower                                         -Borrower

STATE OF GEORGIA, _____ County ss:

Signed, sealed and delivered in the presence of the two attesting witnesses:

_____
Unofficial Witness

Witness my hand and official seal this ____ day of _____ _____

_____
Notary Public, _____ County
State of GEORGIA

Loan originator (organization)  EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, NMLS ▮
Loan originator (individual)  WESLEY CARRINGTON MURPHY, NMLS ▮

_____
**FHA Georgia Security Deed with MERS – 4/96**                                              **Amended 2/01**

IDS Inc.

BK: 15180 PG: 3968

# WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF, **THIS MEANS THAT MY FAILURE TO MEET EVERY CONDITION OF THE MORTGAGE LOAN MAY RESULT IN THE LOSS OF MY PROPERTY THROUGH FORECLOSURE,** (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF, (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH OF THIS DEED, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED, (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION, AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED

READ AND AGREED BY GRANTOR

_____   -Grantor
**SHEENA NICOLE BLACKWELL**

Signed, sealed and delivered in the presence of the two   _____   -Grantor
attesting witnesses

_____   -Grantor
Notary Public

(Official Seal)

_____   -Grantor
Unofficial Witness

---

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **11th day of August, 2014**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION** ("Lender") of the same date and covering the property described in the Security Instrument and located at

<div align="center">

**3304 QUICK WATER LANDING NW**
**KENNESAW, GEORGIA 30144**
(Property Address)

</div>

The Property is a part of a planned unit development ("PUD") known as

<div align="center">

**CREEKSIDE**
(Name of Planned Unit Development Project)

</div>

**PUD COVENANTS** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

A    So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of this Security

---

**FHA — MULTISTATE PUD Rider**                                                      **7/91**

<div align="center">Page 1 of 2</div>

IDS, Inc                                                              Borrower(s) Initials  _S_  _B_

Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy  Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard  In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto

B    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD

C    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider

_____ (Seal)          _____ (Seal)
SHEENA NICOLE BLACKWELL       -Borrower                                           -Borrower

---

FHA — MULTISTATE PUD Rider                                              7/91

Page 2 of 2

IDS Inc.

# CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights "

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure

Sworn to and subscribed before me on the date set forth above

_____    _____
Notary Public    Closing Attorney

# FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____  08/11/14    _____
**SHEENA NICOLE BLACKWELL**    Date    Date

BK: 15180 PG: 3972
REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

# EXHIBIT "A"
## LEGAL DESCRIPTION

**All that tract or parcel of land lying and being in Land Lot 105 of the 20th District, 2nd Section, Cobb County, Georgia, being Lot 88, Creekside Subdivision, Unit Two, as per plat recorded in Plat Book 204, pages 68-72, Cobb County, Georgia Records, which plat is incorporated herein and made a part hereof by reference.**

**Map Reference No.** ▮▮▮▮▮▮▮

BK: 15292 PG: 1875-1876
Filed and Recorded Nov-12-2015 11:45:28AM
DOC#: D2015-093277

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.



Recording Requested By: SUNTRUST MORTGAGE, INC.
When Recorded Return To: Faith Tribbey, SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUE RVW 5303,
RICHMOND, VA 23224

## CORPORATE ASSIGNMENT OF SECURITY DEED

Cobb, Georgia

Date of Assignment: November 2nd, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR EVERETT
FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS COPORATION, ITS SUCCESSORS AND ASSIGNS
at P.O. BOX 2026, FLINT, MI 48501-2026 Assignee: SUNTRUST MORTGAGE, INC. at 1001 SEMMES AVE,
RICHMOND, VA 23224

Executed By: SHEENA NICOLE BLACKWELL, SINGLE WOMAN  To: EVERETT FINANCIAL, INC. D/B/A
SUPREME LENDING, A TEXAS CORPORATION
Date of Security Deed: 08/11/2014 Recorded: 08/25/2014 In Book/Reel/Liber: 15180 Page/Folio: 3961 as
Instrument No.: N/A In the County of Cobb, State of Georgia.

Property Address: 3304 QUICK WATER LANDING NW, KENNESAW, GA 30144

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $220,924.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR EVERETT FINANCIAL, INC.
D/B/A SUPREME LENDING, A TEXAS CORPORATION, ITS SUCCESSORS AND ASSIGNS
On 11/6-15

By:

Vice-
President          Vashti Anthony
                   Assistant Vice President
THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Brittni J Walker

NOTARY WITNESS

BK: 15292 PG: 1876
REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

COMMONWEALTH OF Virginia
COUNTY OF Richmond (City)

Subscribed and sworn to (or affirmed) before me on ‖ ‖6‖5 , by Vashti Arthur Asst Vice
President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR EVERGREEN
MORTGAGE COMPANY, proved to me on the basis of satisfactory evidence to be the person(s) who appeared
before me.

WITNESS my hand and official seal

_Latoya Robinette Eck_
LATOYA ROBINETTE ECK
Notary Expires: 6/30/17

LATOYA ROBINETTE ECK
Notary Public
Commonwealth of Virginia
368311
My Commission Expires Jun 30, 2017

(This area for notarial seal)

**AGREEMENT AND PLAN OF MERGER**
**BETWEEN**
**SUNTRUST MORTGAGE, INC.**
**AND**
**SUNTRUST BANK**

This Agreement and Plan of Merger (this "Plan") is made and entered into as of the 29th day of November, 2017, between SUNTRUST MORTGAGE, INC., a Virginia corporation ("STM"), and SUNTRUST BANK, a Georgia state bank that is a member of the Federal Reserve System ("STB").

W I T N E S S E T H:

WHEREAS, STM is a wholly owned subsidiary of STB, and STB and STM have determined that it is in the best interests of STB and STM to merge STM with and into STB.

NOW, THEREFORE, in consideration of the above premises and the mutual covenants and agreements set forth herein, the parties hereto agree as follows:

1.    Merger. Pursuant to the provisions of Section 18(c) of the Federal Deposit Insurance Act, Section 7-1-530 of the Financial Institutions Code of Georgia and Section 13.1-716 of the Virginia Stock Corporation Act, STM shall be merged with and into STB (the "Merger"). STB shall be the surviving institution of the Merger (the "Resulting Institution") and shall operate with the name "SunTrust Bank."

2.    Effective Time of the Merger. The Merger shall become effective on the date and at the time specified in the Articles of Merger to be filed with the State of Georgia and the State of Virginia (the "Effective Time").

3.    Location, Articles, Bylaws, Directors and Executive Officers of the Resulting Institution. At the Effective Time of the Merger:

      (a)    The head office of the Resulting Institution shall be located at the head office of STB immediately prior to the Effective Time of the Merger.

      (b)    The Articles of Incorporation of the Resulting Institution shall be the Articles of Incorporation of STB in effect immediately prior to the Effective Time of the Merger.

      (c)    The Bylaws of the Resulting Institution shall be the Bylaws of STB in effect immediately prior to the Effective Time of the Merger.

      (d)    The Board of Directors of the Resulting Institution shall be the same members of the Board of Directors of STB immediately prior to the Effective Time of the Merger and shall serve until the next annual meeting of the shareholders of the Resulting Institution or until such time as their successors have been elected and qualified.

      (e)    The executive officers of the Resulting Institution shall be the same as the executive officers of STB immediately prior to the Effective Time of the Merger and shall serve until such time as their successors have been appointed.

4.      Manner of Converting Shares.

(a)      By virtue of the Merger, automatically and without any action on the part of the holder thereof, each of the shares of the capital stock of STM issued and outstanding immediately prior to the Effective Time of the Merger shall be cancelled and retired at the Effective Time, and no consideration shall be issued in exchange therefor.

(b)      Upon and after the Effective Time, each issued and outstanding share of capital stock of STB shall remain unchanged and shall continue to evidence the same number of shares of capital stock of STB.

5.      Condition Precedent to Consummation of the Merger.  Consummation of the Merger provided for herein is conditioned upon receipt of all necessary consents to the Merger from applicable regulatory authorities.

6.      Termination.  This Plan may be terminated at any time prior to the Effective Time by written agreement of the parties hereto.

7.      Counterparts, Headings, Governing Law.  This Plan may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  The title of this Plan and the headings contained herein are for convenience of reference only and shall not be deemed a part of this Plan.  This Plan shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflicts of laws principles.

(signature page follows)

2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement and Plan of Merger to be executed by their duly authorized officers as of the day and year first above written.

SUNTRUST MORTGAGE, INC.

By: _Dorinda C Smith_ _____

Name: _Dorinda C Smith_ _____

Title: _President and CEO_ _____

SUNTRUST BANK

By:_____

Name:_____

Title:_____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement and Plan of Merger to be executed by their duly authorized officers as of the day and year first above written.

SUNTRUST MORTGAGE, INC.

By: _____
Name: _____
Title: _____

SUNTRUST BANK

By: _____
Name: _____MARK A. CHANCY_____
Title: _____VICE CHAIRMAN &_____
        CORPORATE EVP



# NORTH CAROLINA
## Department of the Secretary of State

To all whom these presents shall come, Greetings:

I, Elaine F. Marshall, Secretary of State of the State of North Carolina, do hereby certify the following and hereto attached to be a true copy of

### ARTICLES OF MERGER

### OF

### SUNTRUST BANK

### INTO

### BRANCH BANKING AND TRUST COMPANY

the original of which was filed in this office on the 6th day of December, 2019.





Scan to verify online.

Document Id: C201934000038
Verify this certificate online at http://www.sosnc.gov/verification

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Raleigh, this 6th day of December, 2019.

*Elaine F. Marshall*

**Secretary of State**

SOSID: 0023695
Date Filed: 12/6/2019 9:02:00 AM
Effective: 12/7/2019
Elaine F. Marshall
North Carolina Secretary of State
**C2019 340 00038**

*State of North Carolina*
*Department of the Secretary of State*

## ARTICLES OF MERGER

Pursuant to North Carolina General Statute Sections 55-11-05(a), 55-11-12, 55A-11-09(d), 55A-11-04, 57D-9-42, 59-73.32(a) and 59-1072(a), as applicable, the undersigned entity does hereby submit the following Articles of Merger as the surviving business entity in a merger between two or more business entities.

1.  The name of the surviving entity is <u>Branch Banking and Trust Company</u>, a *(check one)*
    ☑ corporation,☐ nonprofit corporation,☐ professional corporation,☐ limited liability company,
    ☐ limited partnership,☐ partnership,☐ limited liability partnership organized under the laws of
    <u>North Carolina</u> *(state or country)*.

2.  The address of the surviving entity is:

    Street Address: <u>214 N. Tryon St.</u>        City: <u>Charlotte</u>

    State: <u>North Carolina</u>    Zip Code: <u>28202</u>    County: <u>Mecklenburg</u>

    (a)  *(Complete only if the surviving business entity is a foreign business entity that is not authorized to transact business or conduct affairs in North Carolina.)* The mailing address of the surviving foreign business entity is:

    Street Address:_____    City:_____

    State:_____ Zip Code:_____ County:_____

    The Surviving foreign business entity will file a statement of any subsequent change in its mailing address with the North Carolina Secretary of State.

3.  For <u>each</u> merging entity: *(if more than one, complete on separate sheet and attach.)*

    The name of the merged entity is <u>SunTrust Bank</u>, a *(check one)*
    ☑ corporation,☐ nonprofit corporation,☐ professional corporation,☐ limited liability company,
    ☐ limited partnership,☐ partnership,☐ limited liability partnership organized under the laws of
    <u>Georgia</u> *(state or country)*.

    The mailing address of each merging entity is: *(If more than one, complete on separate sheet and attach)*
    Street Address: <u>303 Peachtree Street, N.E.</u>        City: <u>Atlanta</u>

    State: <u>Georgia</u>    Zip Code: <u>30308</u>    County: <u>Fulton</u>

4.  If the surviving business entity is a <u>domestic</u> business entity, the text of each amendment, if any, to the Articles of Incorporation, Articles of Organization, or Certificate of Limited Partnership within the Plan of Merger is attached.

5.  A Plan of Merger has been duly approved in the manner required by law by each of the business
    entities participating in the merger.

    **Provide the information in Items 6 and 7 below for a merger between a parent
    unincorporated entity and a subsidiary corporation or corporations. (§55-11-12)**

6.  The terms and conditions of the merger are attached. (§55-11-12 mergers only)

7.  Information concerning the manner and basis of converting the interests in each merging business
    entity into interests, obligations, or securities of the surviving business entity, or into cash or other
    property in whole or in part, or of cancelling the interests is attached. (§55-11-12 mergers only)

8.  These articles will be effective upon filing unless a delayed date and/or time is specified 12:05 AM EST on December 7, 2019 .

This the  6th  day of December , 20 19

Branch Banking and Trust Company
*Name of Entity*

*Signature*

Daryl N. Bible, Senior Executive Vice President and Chief
Financial Officer
*Type or Print Name and Title*

**NOTES:**
1.  Filing fee is $50 for For-profit entities.
2.  Filing fee is $25 when the surviving business entity is a Non-profit corporation.
3.  This document must be filed with the Secretary of State.  Certificate(s) of Merger must be registered pursuant to
    the requirements of N.C.G.S. Section 47-18.1

BUSINESS REGISTRATION DIVISION                    P. O. BOX 29622                    RALEIGH, NC 27626-0622
*(Revised October, 2018)*                                                           *(Form BE-15)*



OFFICE OF THE COMMISSIONER OF BANKS

### CERTIFICATE OF AUTHORITY
### FOR ARTICLES OF MERGER

Branch Banking and Trust Company, Charlotte, Mecklenburg County, North Carolina, a North Carolina-chartered commercial bank, and SunTrust Bank, Atlanta, Fulton County, Georgia, a Georgia state-chartered bank, have submitted to me as Chief Deputy Commissioner of Banks for the State of North Carolina, Articles of Merger between the said institutions for the purpose of merging SunTrust Bank into Branch Banking and Trust Company with the surviving institution being Branch Banking and Trust Company, pursuant to the Supervisory Order of the Commissioner of Banks.

I hereby certify that these Articles of Merger were approved by the Office of the Commissioner of Banks on the 10th day of July, 2019. Authority to file the Articles of Merger is, therefore, granted.

This the 26th day of November, 2019.

Stephanie Ryals

Stephanie Ryals
Chief Deputy Commissioner of Banks



# NORTH CAROLINA
## Department of the Secretary of State

To all whom these presents shall come, Greetings:

I, Elaine F. Marshall, Secretary of State of the State of North Carolina, do hereby certify the following and hereto attached to be a true copy of

### ARTICLES OF AMENDMENT

### OF

### BRANCH BANKING AND TRUST COMPANY

### WHICH CHANGED ITS NAME TO

### TRUIST BANK

the original of which was filed in this office on the 6th day of December, 2019.





Scan to verify online.

Document Id: C201934000039
Verify this certificate online at http://www.sosnc.gov/verification

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Raleigh, this 6th day of December, 2019.

*Elaine F. Marshall*

**Secretary of State**

SOSID: 0023695
Date Filed: 12/6/2019 9:03:00 AM
Effective: 12/7/2019
Elaine F. Marshall
North Carolina Secretary of State
C2019 340 00039

**State of North Carolina
Department of the Secretary of State**

## ARTICLES OF AMENDMENT
## BUSINESS CORPORATION

Pursuant to §55-10-06 of the General Statutes of North Carolina, the undersigned corporation hereby submits the following Articles of Amendment for the purpose of amending its Articles of Incorporation.

1.  The name of the corporation is: Branch Banking and Trust Company

2.  The text of each amendment adopted is as follows (*State below or attach*):

    Please see attached.

3.  If an amendment provides for an exchange, reclassification, or cancellation of issued shares, provisions for implementing the amendment, if not contained in the amendment itself, are as follows:

4.  The date of adoption of each amendment was as follows: December 3, 2019

5.  (Check either a, b, c, or d, whichever is applicable)

    a. ☐ The amendment(s) was (were) duly adopted by the incorporators prior to the issuance of shares.

    b. ☐ The amendment(s) was (were) duly adopted by the board of directors prior to the issuance of shares.

    c. ☐ The amendment(s) was (were) duly adopted by the board of directors without shareholder action as shareholder action was not required because (*set forth a brief explanation of why shareholder action was not required.*)

    d. ☑ The amendment(s) was (were) approved by shareholder action, and such shareholder approval was obtained as required by Chapter 55 of the North Carolina General Statutes.

*BUSINESS REGISTRATION DIVISION*          P. O. BOX 29622                    RALEIGH, NC 27626-0622
*(Revised July 2017)*                                                                      *(Form B-02)*

**ARTICLES OF AMENDMENT**
Page 2

6.  These articles will be effective upon filing, unless a delayed time and date is specified:
    12:06 AM EST on December 7, 2019.

This the 6th day of December , 20 19

                    Branch Banking and Trust Company
                    _____
                          Name of Corporation

                    _____
                               Signature

                    Daryl N. Bible, Senior Executive Vice President and Chief Financial Officer
                    _____
                        Type or Print Name and Title

NOTES:
1.  Filing fee is $50. This document must be filed with the Secretary of State.

BUSINESS REGISTRATION DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622
(Revised July 2017)                                                        (Form B-02)

ARTICLES OF AMENDMENT

OF

BRANCH BANKING AND TRUST COMPANY

The undersigned corporation hereby submits these Articles of Amendment in accordance
with Section 55-10-03 and 55-10-06 of the North Carolina Business Corporation Act for the
purpose of amending its Articles of Incorporation:

1. The name of the corporation is: Branch Banking and Trust Company.

2. The following text will replace the current text of ARTICLE I in its
   entirety:

   The name of the Corporation is Truist Bank.

3. The amendment does not provide for an exchange, reclassification or cancellation of
   issued shares.

4. The amendment was approved by the sole shareholder of the corporation on December
   3, 2019, in accordance with Section 55-10-03 of the North Carolina Business
   Corporation Act.

5. These Articles of Amendment will be effective at 12:06 a.m. on December 7, 2019.

This is the 6th day of December, 2019.

                                        BRANCH BANKING AND TRUST COMPANY

                                        By: _____
                                        Name:  Daryl N. Bible
                                        Title:    Senior Executive Vice President and
                                                  Chief Financial Officer



### OFFICE OF THE COMMISSIONER OF BANKS

## CERTIFICATE OF AUTHORITY
## FOR
## ARTICLES OF AMENDMENT

I, Stephanie Ryals, Chief Deputy Commissioner of Banks for the State of North Carolina, hereby certify that the foregoing ARTICLES OF AMENDMENT of Branch Banking and Trust Company, having its principal office in Charlotte, Mecklenburg County, North Carolina, were approved by the Office of the Commissioner of Banks for filing at the Office of the Secretary of State. Authority to record the Articles of Amendment is hereby granted.

This the 26th day of November, 2019.

Stephanie Ryals
Stephanie Ryals
Chief Deputy Commissioner of Banks



# Exhibit

# "C"

XR: 1

Deed Book 15614 Page 6315
Filed and Recorded 03/26/2019 02:49:00 AM
2019-0031377
Rebecca Keaton
Clerk of Superior Court
Cobb County, GA
Participant IDs: ▮▮▮▮▮▮

RETURN RECORDED DOCUMENT TO:
SunTrust Mortgage, Inc.
Loss Mitigation, RVW 3054
1001 Semmes Avenue
Richmond, VA 23224
Prepared By: SUNTRUST MORTGAGE

_____ [Space Above This Line For Recording Data] _____

INVESTOR LOAN# ▮▮▮▮▮▮                                    LOAN# ▮▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 3RD day of NOVEMBER, 2017, between SHEENA NICOLE BLACKWELL, SINGLE WOMAN ("Borrower") and SunTrust Mortgage, Inc ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated AUGUST 11, 2014 in the amount of $220,924.00 and recorded AUGUST 25, 2014 in book or Libor 15180 at page(s) 3961-3972, of the OFFICIAL Records of COBB COUNTY, GA and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

3304 QUICK WATER LANDING NW
KENNESAW, GEORGIA 30144
(Property Address)

the real property described being set forth as follows:

SEE ATTACHED SCHEDULE "A"

| For Recording Purposes: | |
|---|---|
| Original Principal Amount | $  220,924.00 |
| Unpaid Principal Balance | $  208,566.86 |
| New Mod Principal Balance | $  159,243.08 |
| Mod New Money | $        0.00 |

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of NOVEMBER 1, 2017 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $159,243.08 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. UPB Prior to Mod: $208,566.86; Capitalized Amount: $0.00

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875%, from NOVEMBER 1, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $748.82, beginning on the 1ST day of DECEMBER, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.875% will remain in effect until principal and interest are paid in full. If on NOVEMBER 1, 2047 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.

   If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies

permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

Deed Book 15614 Page 6317

By checking this box, Borrower also consents to being contacted by text messaging☐.

6.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds.  Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

Deed Book 15614 Page 6319

BY SIGNING BELOW, Borrower and Lender do each accept and agree to the terms and covenants in this Loan Modification Agreement as of the date first written above.

BORROWER

**SHEENA NICOLE BLACKWELL**

By _____
Witness (Print Name): _An Moore_

By _____
Witness (Print Name) _Cinthia Perez_

State of _Ga_ §
County/City of _Kennesaw_ §

On this the _21_ day of _November_, _2017_ before me, (Notary's Name) _Patrick Healy_, personally appeared (Borrower/Title Holder's Name) _Sheena Nicole Blackwell_, who is/are personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the above instrument and acknowledged to me that he/she/they executed the same as his/her/their voluntary act and deed.

WITNESS my hand and official seal.

Notary Signature _Patrick Healy_ (Seal)
My Commission Expires: _6/7/2019_



Deed Book 15614 Page 6320

_____[Space Below This Line For Acknowledgement]_____

*Melissa Seifert*   **Witness Sign**

Melissa Seifert   **Witness Print**

*(signature)*   **Witness Sign**

Gabriel Dixon   **Witness Print**

SUNTRUST MORTGAGE, INC.

**Morgan Hall
Asst. Vice President**

*(signature)*
SUNTRUST MORTGAGE, INC.      Lender

12.5.17

Date of Lender's Signature

(LENDER'S CORPORATE ACKNOWLEDGMENT)

COMMONWEALTH OF UNDERLINE VIRGINIA,
CITY OF RICHMOND, to wit:

I, Christian Lynn Jeffrey, a Notary Public in and for the said jurisdiction, do hereby certify

that this day personally appeared before me in my said jurisdiction,

Morgan Hall _____ Asst. Vice President of SunTrust Mortgage,

Incorporated whose name is signed to the foregoing instrument and acknowledged the same before me in my

said jurisdiction.

My commission expires:
Registration Number

GIVEN under my hand and notarial seal this the 5th day of December , 20 17 .

*(signature)*                              (Seal)
Notary Public

*(notary seal: CHRISTIAN LYNN JEFFREY / NOTARY PUBLIC / REG # 7744647 / MY COMMISSION EXPIRES 7/31/2021 / COMMONWEALTH OF VIRGINIA)*

Deed Book 15614 Page 6321
Rebecca Keaton
Clerk of Superior Court

## SCHEDULE "A"

**All that tract or parcel of land lying and being in Land Lot 105 of the 20th District, 2nd Section, Cobb County, Georgia, being Lot 88, Creekside Subdivision, Unit Two, as per plat recorded in Plat Book 204, pages 68-72, Cobb County, Georgia Records, which plat is incorporated herein and made a part hereof by reference.**

**Map Reference No.** ▮▮▮▮▮▮▮▮▮

# Exhibit

# "D"

## Post-Petition Payment Ledger

**Name:** SHEENA BLACK **Loan Number:** ████████ **Completed Date:** 2/14/2020

**Case No:** 19-67578 **Filing Date:** 11/4/2019

| Date Received | Amount Received | Total Amount Applied | Suspense Balance | Post-Petition Due Date | Comments |
|---|---|---|---|---|---|
| | | | $ - | | |
| | | | $ - | | |
| | | | $ - | | |
| | | | $ - | | |
| | | | $ - | | |
| | | | $ - | | |
| | | | $ - | | |
| | | | $ - | | |
| | Current Post-Petition Due Date | | | 12/1/2019 | |
| | Current Suspense Balance | | $ - | | |

### Post-Petition Past Due Summary

| Due Date (Date Range) | Total Payment Due | # Months | Total Amount Due |
|---|---|---|---|
| 12/01/2019 -02/01/2020 | $1,406.98 | 3 | $ 4,220.94 |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| Subtotal | | | $ 4,220.94 |
| Less unapplied suspense | | | $ - |
| Total to bring current | | | $ 4,220.94 |