UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO: 19-67578-pwb |
| | : | |
| SHEENA BLACKWELL YOUNG, aka | : | CHAPTER 7 |
| Sheena Young aka Sheena Nicole Blackwell | : | |
| aka Sheena Blackwell aka Sheena N | : | JUDGE BONAPFEL |
| Blackwell aka Sheena B Young | : | |
|     Debtor(s) | : | |

| | | |
|---|---|---|
| TRUIST BANK | : | |
|     Movant(s), | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHEENA BLACKWELL YOUNG, aka | : | |
| Sheena Young aka Sheena Nicole Blackwell | : | |
| aka Sheena Blackwell aka Sheena N | : | CONTESTED MATTER |
| Blackwell aka Sheena B Young | : | |
|     Debtor(s) | : | |
| | : | |
| S. GREGORY HAYS, | : | |
|     Trustee | | |
| | | |
|     Respondents. | | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Truist Bank has filed a Motion for Relief from Stay and related papers with the Court seeking an order for Relief from Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion at the following number: (toll-free number: 833-568-8864; access code 161 794 3084 at **10:15 AM** on **August 16, 2023** in **Courtroom 1401,** in the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta GA 30303.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all

as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta GA 30303**.**

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date.    Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:    June 19, 2023                    SIGNATURE    */s/ Ryan Starks*
                                                          Ryan Starks
                                                          Bar No. 676512
                                                          Counsel for Movant
                                                          BROCK & SCOTT, PLLC
                                                          3825 Forrestgate Dr.
                                                          Winston-Salem, NC 27103
                                                          Telephone:  (844) 856-6646
                                                          Facsimile:  704-369-0760
                                                          E-Mail:  GABKR@brockandscott.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br>**SHEENA BLACKWELL YOUNG,**<br>**aka Sheena Young aka Sheena Nicole**<br>**Blackwell aka Sheena Blackwell aka**<br>**Sheena N Blackwell aka Sheena B**<br>**Young**<br><br>               **DEBTOR** | **CASE NO.  19-67578-PWB**<br>**CHAPTER 7** |

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have on this day electronically filed the foregoing Motion For Relief From Automatic Stay and notice of hearing using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

S. Gregory Hays
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

E. L. Clark, Esq.
Bldg. 3
3300 Northeast Expwy.
Atlanta, GA 30341

Office of U.S. Trustee
75 Spring St.
362 Richard B. Russell Bldg.
Atlanta, GA 30303
*US Trustee*

I further certify that on this day I caused a copy of this document to be served via United States first class mail, with adequate postage prepaid, on the following parties set forth below at

the address shown for each:

SHEENA BLACKWELL YOUNG
3304 QUICK WATER LANDING NW
KENNESAW, GA 30144

This <u>19th Day of June, 2023</u>.

<u>/s/Ryan Starks</u>
Ryan Starks, GA Bar No. 676512
Travis Menk, GA Bar No. 632610
Attorney for Creditor
BROCK & SCOTT, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
Telephone: (844) 856-6646
Facsimile: (704) 369-0760
E-Mail: GABKR@brockandscott.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO: 19-67578 |
| SHEENA BLACKWELL YOUNG, aka Sheena Young aka Sheena Nicole Blackwell aka Sheena Blackwell aka Sheena N Blackwell aka Sheena B Young<br>    DEBTOR(S) | CHAPTER 7 |

| | |
|---|---|
| TRUIST BANK<br>    MOVANT, | |
| v. | |
| SHEENA BLACKWELL YOUNG, aka Sheena Young aka Sheena Nicole Blackwell aka Sheena Blackwell aka Sheena N Blackwell aka Sheena B Young<br>    DEBTOR(S) | CONTESTED MATTER |
| S. GREGORY HAYS,<br>    TRUSTEE | |
| RESPONDENTS, | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

**COMES NOW** Truist Bank (hereinafter "Movant"), a secured creditor in the above-captioned case, by and through counsel, Brock & Scott, PLLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a) :

1.      On November 4, 2019, the Debtor, Sheena Blackwell Young, filed a petition with the Bankruptcy Court for the Northern District of Georgia under Chapter 7 of Title 11 of the United States Code.

2. The Debtor holds title to the real property (hereinafter "Collateral") described in that Security Deed recorded in the Cobb County Clerk of Superior Court in Book 15180 at Page 3961 and recorded on August 25, 2014 (hereinafter "Security Deed") with an address of 3304 Quick Water Landing NW, Kennesaw, Georgia 30144. A copy of the Security Deed is attached hereto and is incorporated herein as Exhibit "A".

3. Movant holds a Promissory Note secured by the Security Deed from the Debtor, Sheena Nicole Blackwell, in the original principal amount of $220,924.00 and dated August 11, 2014 (hereinafter "Note"). A copy of the Note is attached hereto and incorporated herein as Exhibit "B".

4. The terms of the Note were amended by the attached loan modification agreement entered into effective November 3, 2017. A copy of the loan modification is attached hereto and incorporated herein as Exhibit "C".

5. Truist Bank has the right to initiate and pursue the foreclosure of your loan because Truist Bank is the holder of the Note or is otherwise authorized by the owner of the loan, pursuant to state law, to foreclose.

6. The Debtor has scheduled the value of the Collateral at $265,000.00.

7. Upon information and belief, the approximate payoff, exclusive of legal fees and expenses incurred in connection with the instant motion, due and owing to Movant as of June 7, 2023 is $217,922.88.

8. In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also

incurred $950.00 in legal fees and $188.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

9.      The Debtor(s) has/have defaulted in the mortgage payments.  Upon information and belief, the amount of default, exclusive of fees and costs, is as follows:

| | | | | |
|---|---|---|---|---|
| 7 | Payments @ (05/01/2019 - 11/01/2019) | $ 1,351.96 | $ | 9,463.72 |
| 14 | Payments @ (12/01/2019 - 01/01/2021) | $ 1,406.98 | $ | 19,697.72 |
| 15 | Payments @ (02/01/2021 - 04/01/2022) | $ 1,443.92 | $ | 21,658.80 |
| 6 | Payments @ (05/01/2022 - 10/01/2022) | $ 1,467.17 | $ | 8,803.02 |
| 8 | Payments @ (11/01/2022 - 06/01/2023) | $ 1,655.49 | $ | 13,243.92 |
| | Suspense Balance @ | | $ | -371.27 |
| | **Total Delinquency** | | **$** | **72,495.91** |

10.      Cause exists for relief from the automatic stay. Direct mortgage payments are not being made to Movant. As such, Movant's interests are not adequately protected.

**WHEREFORE,** Movant prays the Court as follows:

1.      Modify the Automatic Stay of 11 U.S.C. § 362(a) to permit Movant to enforce its security interest in the Collateral including but not limited to any non-bankruptcy remedies to foreclose and obtain possession.

2.      Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay.

3.      As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Collateral.

4.      That Creditor be entitled to recover its reasonable fees and expenses incurred in connection with seeking the relief requested in this Motion.

5.      Movant specifically requests permission to communicate with the Debtor(s) and Debtor(s)' counsel to the extent necessary to comply with applicable non-bankruptcy law; and

6.      Grant Movant such other and further relief as the Court deems just and proper.

This 19th day of June, 2023.

/s/Ryan Starks
Ryan Starks, GA Bar No. 676512
Travis Menk, GA Bar No. 632610
Attorney for Creditor
BROCK & SCOTT, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
Telephone: (844) 856-6646
Facsimile: (704) 369-0760
E-Mail: GABKR@brockandscott.com

SunTrust
Filed and Recorded Aug-25-2014 03:51:08PM
DOC#:
Georgia Intangible Tax Paid $663.08

*Rebecca Keaton*

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

McManamy McLeod Heller, LLC
3520 Piedmont Road
Suite 110
Atlanta GA 30305

WHEN RECORDED, MAIL TO
EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TEXAS 75254

This instrument was prepared by
EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TEXAS 75254
214-340-5225

Loan Number

_____ [Space Above This Line For Recording Data] _____

State of Georgia

# SECURITY DEED

FHA Case Number

MIN
SIS Telephone #

THIS SECURITY DEED ("Security Instrument") is given on **August 11, 2014**

The Grantor is **SHEENA NICOLE BLACKWELL, SINGLE WOMAN,** ("Borrower")
and whose address is **3304 QUICK WATER LANDING NW, KENNESAW, GEORGIA 30144**

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc. ("MERS"),** (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee MERS is organized and existing under the laws of Delaware, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026,** tel **(888) 679-MERS**

**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION,** ("Lender")
is organized and existing under the laws of TEXAS,
and has an address of **14801 QUORUM DRIVE, SUITE 300, DALLAS, TEXAS 75254.**

Borrower owes Lender the principal sum of **TWO HUNDRED TWENTY THOUSAND NINE HUNDRED TWENTY-FOUR AND NO/100,** Dollars (U S **$220,924.00**) This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2044 This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in COBB County, Georgia

FHA Georgia Security Deed with MERS – 4/96

Page 1 of 7

Amended 2/01

IDS inc.

Borrower(s) Initials _____

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**

Parcel ID Number

which has the address of   **3304 QUICK WATER LANDING NW**
**KENNESAW, GEORGIA 30144**, ("Property Address"),

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4 In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds "

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U S C Section 2601 *et seq* and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c)

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium,

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required,

---

FHA Georgia Security Deed with MERS – 4/96

Amended 2/01

IDS Inc

Borrower(s) Initials

Third, to interest due under the Note,

Fourth, to amortization of the principal of the Note, and

` Fifth, to late charges due under the Note

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance This insurance shall be maintained in the amounts and for the periods that Lender requires Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary All insurance shall be carried with companies approved by Lender The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender

In the event of loss, Borrower shall give Lender immediate notice by mail Lender may make proof of loss if not made promptly by Borrower Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser

**5. Occupancy, Preservation, Maintenance and Protection of the Property, Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control Borrower shall notify Lender of any extenuating circumstances Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default Lender may take reasonable action to protect and preserve such vacant or abandoned Property Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

**7 Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2 Borrower shall pay these obligations on time directly to the entity which is owed the payment If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable

FHA Georgia Security Deed with MERS – 4/96

Amended 2/01

Page 3 of 7

IDS Inc

Borrower(s) Initials _____

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

8 **Fees.** Lender may collect fees and charges authorized by the Secretary

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U S C 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument This right applies even after foreclosure proceedings are instituted To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full However, Lender is not required to permit reinstatement if. (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b)

FHA Georgia Security Deed with MERS – 4/96

Page 4 of 7

Amended 2/01

IDS Inc

Borrower(s) Initials _____

Borrower's covenants and agreements shall be joint and several Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end the provisions of this Security Instrument and the Note are declared to be severable

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower This assignment of rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of breach to Borrower (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument, (b) Lender shall be entitled to collect and receive all of the rents of the Property, and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower However, Lender or a judicially appointed receiver may do so at any time there is a breach Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full

**18 Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses**

incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower Borrower shall pay any recordation costs

20. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property

21 Assumption not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation

22 Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument [Check applicable box(es) ]

☐ Condominium Rider           ☐ Graduated Payment Rider    ☐ Adjustable Rate Rider
☒ Planned Unit Development Rider  ☐ Growing Equity Rider      ☒ Other Waiver of Borrower's Rights Rider,

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument

_____ (Seal)                    _____ (Seal)
**SHEENA NICOLE BLACKWELL**          -Borrower                                              -Borrower

**STATE OF GEORGIA,** _____ County ss:

Signed, sealed and delivered in the presence of the two attesting witnesses

                                                        Unofficial Witness

Witness my hand and official seal this _____ day of _____ _____

                                                        Notary Public,
                                                        State of **GEORGIA**

Loan originator (organization) **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**, NMLS # █████
Loan originator (individual) **WESLEY CARRINGTON MURPHY**, NMLS # █████

Loan Number :

## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF, **THIS MEANS THAT MY FAILURE TO MEET EVERY CONDITION OF THE MORTGAGE LOAN MAY RESULT IN THE LOSS OF MY PROPERTY THROUGH FORECLOSURE**, (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF, (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH OF THIS DEED, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED, (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION, AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED

READ AND AGREED BY GRANTOR

**SHEENA NICOLE BLACKWELL**                   -Grantor

Signed, sealed and delivered in the presence of the two                   -Grantor
attesting witnesses

Notary Public                   -Grantor

(Official Seal)

Unofficial Witness                   -Grantor

Loan Number

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **11th day of August, 2014**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION** ("Lender") of the same date and covering the property described in the Security Instrument and located at

### 3304 QUICK WATER LANDING NW
### KENNESAW, GEORGIA 30144
(Property Address)

The Property is a part of a planned unit development ("PUD") known as

### CREEKSIDE
(Name of Planned Unit Development Project)

**PUD COVENANTS** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

A  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of this Security

FHA — MULTISTATE PUD Rider

Page 1 of 2

7/91

IDS, Inc

Borrower(s) Initials _____

Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD. any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto

B    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD

C    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider

_____ (Seal)                    _____ (Seal)
**SHEENA NICOLE BLACKWELL**    -Borrower                                                            -Borrower

FHA — MULTISTATE PUD Rider                                                                                   7/91

Page 2 of 2

IDS Inc.

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights "

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure

Sworn to and subscribed before me on the date set forth above

_____        _____
Notary Public                          Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____   08/11/14        _____
SHEENA NICOLE BLACKWELL              Date                                    Date

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

# EXHIBIT "A"
# LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 105 of the 20th District, 2nd Section, Cobb County, Georgia, being Lot 88, Creekside Subdivision, Unit Two, as per plat recorded in Plat Book 204, pages 68-72, Cobb County, Georgia Records, which plat is incorporated herein and made a part hereof by reference.

Map Reference No.



BK: 15292 PG: 1875-1876
Filed and Recorded Nov-12-2015 11:45:28AM
DOC#:

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

Recording Requested By: SUNTRUST MORTGAGE, INC.
When Recorded Return To: Faith Tribbey, SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUE RVW 5303,
RICHMOND, VA 23224

## CORPORATE ASSIGNMENT OF SECURITY DEED

Cobb, Georgia
**SELLER'S SERVICING #**          "BLACKWELL"

**MIN #:**

Date of Assignment: November 2nd, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR EVERETT
FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS COPORATION, ITS SUCCESSORS AND ASSIGNS
at P.O. BOX 2026, FLINT, MI 48501-2026 Assignee: SUNTRUST MORTGAGE, INC. at 1001 SEMMES AVE,
RICHMOND, VA 23224

Executed By: SHEENA NICOLE BLACKWELL, SINGLE WOMAN To: EVERETT FINANCIAL, INC. D/B/A
SUPREME LENDING, A TEXAS CORPORATION
Date of Security Deed: 08/11/2014 Recorded: 08/25/2014 in Book/Reel/Liber: 15180 Page/Folio: 3961 as
Instrument No.: N/A In the County of Cobb, State of Georgia.

Property Address: 3304 QUICK WATER LANDING NW, KENNESAW, GA 30144

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $220,924.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR EVERETT FINANCIAL, INC.
D/B/A SUPREME LENDING, A TEXAS CORPORATION, ITS SUCCESSORS AND ASSIGNS
On

By:

-President-          -Vice-
          **Vashti Anthony**
          **Assistant Vice President**
THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Brittni J Walker

NOTARY WITNESS

BK: 15292 PG: 1876
REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

COMMONWEALTH OF Virginia
COUNTY OF Richmond (City)

Subscribed and sworn to (or affirmed) before me on ___11 6 15___, by ___Vashti Arthur___, Vice
President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR EVERGREEN
MORTGAGE COMPANY, proved to me on the basis of satisfactory evidence to be the person(s) who appeared
before me.

WITNESS my hand and official seal.

_____
LATOYA NOGINETTE ECK
Notary Expires: 6/30/17

LATOYA NOGINETTE ECK
Notary Public
Commonwealth of Virginia
358311
My Commission Expires Jun 30, 2017

(This area for notarial seal)

# EXHIBIT B

| Multistate | **NOTE** | FHA Case No: |
|---|---|---|

**August 11, 2014**
(Date)

## 3304 QUICK WATER LANDING NW
## KENNESAW, GEORGIA 30144
(Property Address)

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION** and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED TWENTY THOUSAND NINE HUNDRED TWENTY-FOUR AND NO/100** Dollars (U.S. **$220,924.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND ONE FOURTH** percent (**4.250%**) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

#### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on **October 1, 2014.** Any principal and interest remaining on the **1st day of September, 2044**, will be due on that date, which is called the "Maturity Date."

#### (B) Place

Payment shall be made at

## EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING
## 14801 QUORUM DRIVE, SUITE 300
### DALLAS, TEXAS 75254

or at such place as Lender may designate in writing by notice to Borrower.

#### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$1,086.81.**
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

#### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other (specify)

---

Page 1 of 3

Borrower(s) Initials S B

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent **(4.000%)** of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)       _____ (Seal)
**SHEENA NICOLE BLACKWELL**        -Borrower                                      -Borrower

Loan originator (organization): **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**; NMLS #: ▮
Loan originator (individual): **WESLEY CARRINGTON MURPHY**; NMLS #: ▮

PAY TO THE ORDER OF:
Suntrust Mortgage Inc.
WITHOUT RECOURSE
EVERETT FINANCIAL INC.,
DBA: SUPREME LENDING, A TEXAS CORPORATION
BY:
NAME:   OWEN CLAUS
TITLE:   POST CLOSING MANAGER

WITHOUT RECOURSE, PAY TO THE ORDER OF

_____
SUNTRUST MORTGAGE, INC.

MARY KATHRYN BRIZENDINE, Vice President

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02                              Page 3 of 3
IDS, Inc.

# EXHIBIT C

XR: 1

Deed Book 15614 Page 6315
Filed and Recorded 03/26/2010 02:40:00 AM

Rebecca Keaton
Clerk of Superior Court
Cobb County, GA
Participant IDs:

RETURN RECORDED DOCUMENT TO:
SunTrust Mortgage, Inc.
Loss Mitigation, RVW 3054
1001 Semmes Avenue
Richmond, VA 23224
Prepared By: SUNTRUST MORTGAGE

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 3RD day of NOVEMBER, 2017, between SHEENA NICOLE BLACKWELL, SINGLE WOMAN ("Borrower") and SunTrust Mortgage, Inc ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated AUGUST 11, 2014 in the amount of $220,924.00 and recorded AUGUST 25, 2014 in book or Libor 15180 at page(s) 3961-3972, of the OFFICIAL Records of COBB COUNTY, GA and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

3304 QUICK WATER LANDING NW
KENNESAW, GEORGIA 30144
(Property Address)

the real property described being set forth as follows:

SEE ATTACHED SCHEDULE "A"

| For Recording Purposes: | |
|---|---|
| Original Principal Amount | $ 220,924.00 |
| Unpaid Principal Balance | $ 208,566.86 |
| New Mod Principal Balance | $ 159,243.08 |
| Mod New Money | $ 0.00 |

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of NOVEMBER 1, 2017 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $159,243.08 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. UPB Prior to Mod: $208,566.86; Capitalized Amount: $0.00

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875%, from NOVEMBER 1, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $748.92, beginning on the 1ST day of DECEMBER, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.   The yearly rate of 3.875% will remain in effect until principal and interest are paid in full. If on NOVEMBER 1, 2047 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.

If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies

permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note and

    (b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

    (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)  Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

    Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

Deed Book 15614 Page 6317

By checking this box, Borrower also consents to being contacted by text messaging☐.

6.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation
to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of
the amount needed to fully fund the Escrow Items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this
Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for:
(a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or
encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums
for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance
premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in
accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that
Lender requires to be escrowed. These items are called "Escrow Items."  Borrower shall promptly furnish
to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for
Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.
Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.
Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when
and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by
Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time
period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall
for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase
"covenant and agreement" is used in the Loan Documents.  If Borrower is obligated to pay Escrow Items
directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may
exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall
then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all
Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such
revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this
paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the
Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to
exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of
Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or
otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or
entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home
Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under
RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the
escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and
applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable
law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or
earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on
the Funds.  Lender shall provide Borrower, without charge, an annual accounting of the Funds as required
by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

Deed Book 15614 Page 6319

BY SIGNING BELOW, Borrower and Lender do each accept and agree to the terms and covenants in this Loan Modification Agreement as of the date first written above.

BORROWER

SHEENA NICOLE BLACKWELL

By _____
Witness (Print Name): An Moore

By _____
Witness (Print Name): Cinthia Perez

State of __Ga__ §
County/City of __Kennesaw__ §

On this the __21__ day of __November__, __2017__ before me, (Notary's Name) __Patrick K Healy__, personally appeared (Borrower/Title Holder's Name) __Sheena Nicole Blackwell__, who is/are personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the above instrument and acknowledged to me that he/she/they executed the same as his/her/their voluntary act and deed.

WITNESS my hand and official seal.

Notary Signature _____ (Seal)
My Commission Expires: __6/7/2019__



_____ [Space Below This Line For Acknowledgement] _____

| | | Morgan Hall |
| --- | --- | --- |
| *Melissa Seifert*  **Witness Sign** | SUNTRUST MORTGAGE, INC. | **Asst. Vice President** |

*Melissa Seifert*   **Witness Print**

SUNTRUST MORTGAGE, INC.      Lender

_____ **Witness Sign**

*Gabriel Dixon*   **Witness Print**

12.5.17

Date of Lender's Signature

(LENDER'S CORPORATE ACKNOWLEDGMENT)

COMMONWEALTH OF VIRGINIA,
CITY OF RICHMOND, to wit:

I, Christian Lynn Jeffrey, a Notary Public in and for the said jurisdiction, do hereby certify
that this day personally appeared before me in my said jurisdiction,
Morgan Hall                                   Asst. Vice President of SunTrust Mortgage,
Incorporated whose name is signed to the foregoing instrument and acknowledged the same before me in my
said jurisdiction.

My commission expires:
Registration Number

GIVEN under my hand and notarial seal this the 5th day of December, 20 17.

Christian Lynn Jeffrey   (Seal)
Notary Public

*[Notary Seal: CHRISTIAN LYNN JEFFREY, NOTARY PUBLIC, REG # 7744647, MY COMMISSION EXPIRES 7/31/2021, COMMONWEALTH OF VIRGINIA]*

Deed Book 15614 Page 6321
Rebecca Keaton
Clerk of Superior Court

SCHEDULE "A"

**All that tract or parcel of land lying and being in Land Lot
105 of the 20th District, 2nd Section, Cobb County, Georgia,
being Lot 88, Creekside Subdivision, Unit Two, as per plat
recorded in Plat Book 204, pages 68-72, Cobb County,
Georgia Records, which plat is incorporated herein and
made a part hereof by reference.**

**Map Reference No.**